**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JOSHUA KALLAI, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED**<br>738 Eastview Avenue<br>Wadsworth, Ohio 44281 | CASE NO.: 5:21-CV-00056<br><br>JUDGE JOHN R. ADAMS<br><br>MAGISTRATE JUDGE<br>KATHLEEN K. BURKE |
| **JENA KALLAI, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED**<br>738 Eastview Avenue<br>Wadsworth, Ohio 44281 | **FIRST AMENDED CLASS ACTION COMPLAINT: VIOLATION OF REAL ESTATE SETTLEMENT PRACTICES ACT (12 U.S.C. § 2607)** |

                    Plaintiffs,

vs.

**JATOLA HOMES LLC d/b/a THE AMY WENGERD GROUP**
c/o MARA C. AMAN, ESQ.
4942 HIGBEE AVENUE
UNIT H
CANTON, OHIO 44718

-and-

**AMAN TITLE, LLC**
c/o MARA C. AMAN
4942 HIGBEE AVENUE
UNIT H
CANTON, OHIO 44718

-and-

**OHIO REAL TITLE AGENCY LLC**
c/o MANBIR S. SANDHU
1213 PROSPECT AVENUE
SUITE 300
CLEVELAND, OHIO 44115

-and-

1

**AMY L. WENGERD**
8439 MACKENZIE AVENUE NW
CANTON, OHIO 44720-9544

-and-

**MARA C. AMAN**
4022 DUNOON CIRCLE NW
CANTON, OHIO 44718-2246

-and-

**JOHN DOE REAL ESTATE AGENT NO.
1**
NAME AND ADDRESS UNKNOWN

-and-

**JOHN DOE REAL ESTATE AGENT NO.
2**
NAME AND ADDRESS UNKNOWN

        Defendants.

Plaintiffs, Joshua Kallai and Jena Kallai,, on behalf of themselves  and all others similarly situated (collectively "Kallai", or "Plaintiffs"), for their  claims against Defendants, Jatola Homes, LLC d/b/a The Amy Wengerd Group ("The Amy Wengerd Group"), Aman Title, LLC ("Aman Title"), Ohio Real Title Agency, LLC ("Ohio Real Title"), (collectively, "Title Companies"), Amy L. Wengerd ("Amy"), Mara C. Aman ("Mara"), John Doe Real Estate Agent No. 1 (name unknown), John Doe Real Estate Agent No. 2 (name unknown), states as follows:

## **THE PARTIES**

1.      Joshua and Jena Kallai are individuals residing at 738 Eastview Ave., Wadsworth, Ohio.

2.     Jatola Homes, LLC d/b/a The Amy Wengerd Group is a limited liability company organized under the laws of the State of Ohio and doing business in Stark County, Ohio. Amy has an ownership interest in Jatola Homes, LLC d/b/a The Amy Wengerd Group.

3.     Aman Title, LLC, NPN# 18699732, is a limited liability company organized under the laws of the State of Ohio and doing business in Stark County, Ohio. The Wengerd Group and Mara have ownership interests in Aman Title, LLC.

4.     Ohio Real Title Agency, LLC, NPN# 8685578, is a limited liability company organized under the laws of the State of Ohio and doing business in Stark County, Ohio.  The Wengerd Group has an ownership interest in Ohio Real Title Agency, LLC and/or one of its related entities.

5.     Amy L. Wengerd is an individual residing at 8439 Mackenzie Avenue, Canton, Stark County, Ohio and is a real estate salesperson licensed with the State of Ohio, License No. SAL.0000436224.

6.     Mara C. Aman is an individual residing at 4022 Dunoon Circle NW, Canton, Stark County, Ohio and is licensed by the Ohio Department of Insurance, NPN# 8460147.

7.     John Doe Real Estate Agent No. 1 is an individual residing in Ohio and a real estate salesperson licensed with the State of Ohio whose name and address are unknown to Plaintiff and could not be discovered with reasonable diligence.

8.     John Doe Real Estate Agent No. 2 is an individual residing in Ohio and a real estate salesperson licensed with the State of Ohio whose name and address are unknown to Plaintiff and could not be discovered with reasonable diligence.

3

9.     Defendants[1] are in the business of providing real estate and/or settlement services in connection with federally related residential mortgage loans to residents of the State of Ohio.

## INTRODUCTION

10.     Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

11.     This is a federal class action on behalf of a class consisting of all persons who qualify under the Real Estate Settlement Procedures Act ("RESPA") and applicable HUD regulations and who: (a) used the services of The Amy Wengerd Group and/or one or more of its team real estate agents, Amy and/or the John Doe Real Estate Agents in connection with the purchase and/or sale of residential real estate, which purchase or sale closed within one year prior to the filing of this Complaint; (b) were referred by The Amy Wengerd Group and/or one or more of its team real estate agents or Amy and/or the John Doe Real Estate Agents to the Title Companies to provide settlement services in transactions involving federally related mortgage loans; and (3) used the Title Companies to provide settlement services in transactions involving federally related mortgage loans due to such referral.

12.     In violation of Section 8(b) of RESPA, 12 U.S.C. §2607, Defendants have systematically and unlawfully given and/or accepted fees, kickbacks, and/or things of value pursuant to an agreement or understanding between and/or among Defendants that business incident to or a part of a real estate settlement services involving federally related mortgage loans shall be referred to the Title Companies.

---

[1] "Defendants" as used herein collectively refers to Defendants, Jatola Homes, LLC d/b/a The Amy Wengerd Group, Aman Title, LLC, Ohio Real Title Agency, LLC, Amy L. Wengerd, Mara C. Aman, John Doe Real Estate Agent No. 1 (name unknown) and John Doe Real Estate Agent No. 2 (name unknown).

## STATEMENT OF FACTS

***The Amy Wengerd Group, with the Support of its Real Estate Agents and Defendants Regularly and Routinely Gives Bonuses to Real Estate Agents for Referrals to the Title Companies***

13.     Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

14.     The Amy Wengerd Group is a real estate brokerage firm providing real estate services in northeast Ohio, including Stark County, whose website boasts its sales figures:



Over 75 million dollars in home sales for 2019 – serving over 425 families * Offering a Guaranteed Sale Program and "Easy Out" Listing Promise to all sellers * Ranked No. 227 on Real Trends "The Thousand" list for most team transactions as advertised by The Wall Street Journal *

(See https://www.amysguarantee.com/team, last accessed December 9, 2020.)

15.     For most of 2019, the Amy Wengerd Group was affiliated with RE/MAX, LLC, a national real estate broker.

16.     However, in November 2019, The Amy Wengerd Group began operating under the umbrella of EXP Realty, a cloud-based national real estate brokerage firm,

17.     At all times relevant herein, Amy had real estate agents, and John Doe Real Estate Agents working with The Amy Wengerd Group, RE/MAX, and EXP Realty as independent contractors.

18.    The Amy Wengerd Group generally separated her real estate agents into two different teams, Listing Agents and Buyer's Agents (hereinafter collectively referred to as "The Amy Wengerd Team Real Estate Agents" or "Team Real Estate Agents").

19.    The Amy Wengerd Group, with the direction, approval, and support of the Title Companies, entered into a written and/or oral agreement and/or understanding with their Team Real Estate Agents, and the John Doe Real Estate Agents that The Amy Wengerd Group, acting with the direction, approval, and support of the Title Companies, would give their Team Real Estate Agents, and the John Doe Real Estate Agents a bonus for each referral of a seller or buyer to the Title Companies.

20.    For instance, the 2019 Position Agreement for a Buyer Agent with the Amy Wengerd Group included the following provision:

| AGENT INCENTIVES |
| --- |
| **Title Company Incentives** |
| For every Buyer that you're able to close with Ohio Real Title, you will receive an additional $50 paid at the end of the year. |
| For Example: |
| Ohio Real Title        24 Closings |
| Total                      24 X $50 = $1,200 |
| For the 2019 Payout – we will count from January – November and then payouts will be made at the Team Christmas Party in December. |

21.    The 2020 Position Agreement for a Buyer Agent with the Amy Wengerd Group included the following provision:

| AGENT INCENTIVES |
| --- |
| **Title Company Incentives** |
| For every Buyer that you're able to close with Ohio Real Title or Aman Title (in-house), you will receive an additional bonus.  $50 Bonus on the deals 1-24 and $75 on deals 25+ |
| For Example: |
| Ohio Real Title        24 Closings |
| Total                      24 X $50 = $1,200 |
| For the 2020 Payout - we will count from December 2019 - November 2020 and then Bonuses will be paid at the Team Christmas Party in December 2020. |

22.    The 2020 Position Agreement for a Listing Agent with the Amy Wengerd Group included the following provision:



**Title Company Incentives**
For every Seller that you're able to close with Aman Title or Ohio Real Title, you will receive an added Selling Bonus.
$50 Bonus on the first 24 closings
$75 Bonus on every closing thereafter (25+)
For the 2020 Payout - we will count from December 2019 - November 2020 and then these bonuses will be paid out at the Team Christmas Party in December 2020.

23.    The same or similar provisions were incorporated within all or substantially all of the Position Agreements entered into by the Amy Wengerd Group with its Team Real Estate Agents.

24.    At one point in July, 2019, Amy sent out a Facebook message encouraging the Team Real Estate Agents and John Doe Real Estate Agents to make referrals to the Title Companies, emphasizing, "***That's great extra income for no additional work***":

Amy Wengerd ▸ TAWG
July 9 ·

Woo-hoo! I'm excited to see the bonuses our agents will be getting at our Christmas party this year for their title payouts. That's great extra income for no additional work. Let's keep it going the second half!

Like                    Comment

25.    Pursuant to the 2019 Position Agreement, the Amy Wengerd Group paid such incentives to Team Real Estate Agents at its Christmas Party in December of 2019 as agreed.

26.    Such incentives were announced publicly at the Christmas Party and acclaim given to those Team Real Estate Agents who were able to close the most deals with the Title Companies.

27.     The Amy Wengerd Group's 2019 Christmas Party was sponsored by Aman Title and personally attended by Mara Aman.

28.     Due to this agreement and/or understanding, Amy, its Team Real Estate Agents and/or the John Doe Real Estate Agents regularly referred sellers and buyers to the Title Companies to provide settlement services in transactions involving federally related mortgage loans, and the sellers and buyers used the Title Companies to provide settlement services due to such referral.

29.     For each such referral, the Amy Wengerd Group, with the direction, approval, and support of the Title Companies paid bonuses The Amy Wengerd Team Real Estate Agents, and/or the John Doe Real Estate Agents for each such referral, which the Team Real Estate Agents, and/or the John Doe Real Estate Agents accepted and/or agreed to accept.

30.     Pursuant to the 2020 Position Agreements, The Amy Wengerd Group, with the direction, approval, and support of the Title Companies, agreed to pay such incentives for each such referral for any closings that occurred from December 2019 through November 2020, and the Team Real Estate Agents, and/or the John Doe Real Estate Agents agreed to accept these incentives.

31.     The expectation that such incentives would be paid impacted the conduct of The Amy Wengerd Group, the Title Companies, the Team Real Estate Agents and the John Doe Real Estate Agents from December 2019 through November 2020 regardless of whether the incentives were in fact paid at the December 2020 Christmas Party as agreed.

***The Kallais used Aman Title due to a Referral from The Amy Wengerd Group's Team Listing Real Estate Agent, and The Amy Wengerd Group Either Gave or Promised to Give to the Listing Real Estate Agent a Bonus for this Referral***

8

32.     In the fall of 2019, the Kallais, represented by a real estate agent from Cutler Real Estate, made an offer on a home located at 738 Eastview Ave. in Wadsworth, Ohio ("Home"), which was listed for sale with The Amy Wengerd Group.  The seller of the Home (the "Seller") had entered into a Listing Agreement with the Amy Wengerd Group and/or one of its Team Real Estate Agents.

33.     Ultimately, the Kallais, entered into a Residential Purchase Agreement with the Seller in or around early November 2019 for the Home.

34.     As part of the Purchase Agreement, Amy and The Amy Wengerd Group, through its Listing Team Real Estate Agent and/or John Doe Real Estate Agent(s), referred the Kallais and the Seller, to Aman Title (by providing for the referral in the Agreement for the purchase of the Home) for settlement services in connection with the Kallais' federally related mortgage loan.

35.      As a direct result of this referral, the Kallais and the Seller used Aman Title's services.

36.     The Kallais and the Seller closed the transaction to purchase and sell the Home on December 11, 2019.

37.     At the closing, the Kallais paid Aman Title the following fees and charges: Accounting Fee of $12.50; Closing Fee of $200.00; Commitment Fee of $50.00; Overnight Fees of $80.00; Photocopies of $12.50; Recording and Transfer of $37.50; Wire Fee of $45.00.   The foregoing fees are in excess of what other title companies charge for similar services.

38.     The Amy Wengerd Group, with the direction, approval, and support of Aman Title, promised to give to the Listing Team Real Estate Agent, and/or John Doe Real Estate Agent(s) a bonus for the referral of the Kallais' and the Seller's purchase/sale transaction to Aman Title.

39.     The Listing Team Real Estate Agent, and/or John Doe Real Estate Agent(s) agreed to accept the bonus pursuant to an agreement and/or understanding with The Amy Wengerd Group and the Title Companies' knowledge and/or consent.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

41.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Civ R. 23(A) and 23(B)(1), (2) and (3). A class action is appropriate and necessary in this instance because Defendants have engaged in conduct that violates RESPA on a widespread and systematic basis.

42.     Plaintiffs represent a well-defined class of victimized consumers. The class of persons that Plaintiffs represent is composed of all persons who have used the services of The Amy Wengerd Group, Amy, The Amy Wengerd Group Team Real Estate Agents, and/or the John Doe Real Estate Agents in connection with the purchase and/or sale of real estate, were referred to the Title Companies by The Amy Wengerd Group, Amy, The Amy Wengerd Group Team Real Estate Agents, and/or the John Doe Real Estate Agents for settlement services in transactions involving federally related mortgage loans, used the Title Companies' services as a result of such referral, and whose transactions closed within one year prior to the filing of this Complaint. Not included in this class are Defendants and their officers, directors, employees, agents and/or affiliates.

43.     The class is composed of hundreds of persons geographically disbursed, the joinder of whom in one action is impractical and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court.

44.     The class is easily ascertainable through Defendants' business records, and the class maintains a sufficient community of interest since the rights of each member were violated in a similar fashion based upon Defendants' uniform, unlawful practices.

45.     Plaintiffs' claims are typical of members of the class as a whole because of the similarity, uniformity, and common purpose of Defendants' unlawful conduct.

46.     Defendants utilize standard business practices and forms in connection with the provision of services to the public, and it was through those standard business practices and forms that Defendants violated RESPA.

47.     Plaintiffs and the class have sustained statutory damages as a result of Defendants' violation of RESPA, and Defendants are jointly and severally liable to Plaintiffs and the class members in an amount equal to three times the charge for settlement services paid to the Title Companies.

48.     Plaintiffs will fairly and adequately protect the members of the class, and Plaintiffs has retained counsel competent and experienced in handling claims as alleged in this action.

49.     A class action is superior to all other methods for the just, fair and efficient adjudication of this controversy since joinder of all class members is impractical.

50.     The damages suffered by the individual class members are not sufficient to justify the enormous cost associated with prosecuting this type of litigation.

51.     The expense and burden posed by such individual litigation makes it impractical for the class members to individually redress the wrongs done to them, nor would such an individual case be adequate to ensure that the unlawful practices cease to harm others.

52.     Further, there will be no difficulty in the management of this class action as the claims arise from Defendants' standard business practice.

53.     Common questions of law and fact exist as to all members of the class, and these common issues predominate over any questions that go particularly to any individual member of the class. Among such common questions of law and fact are the following:

a.  Whether Defendants violated 12 U.S.C. §2607 by providing fees, kickbacks, or any other thing of value pursuant to an agreement or understanding that business incident to or part of a real estate settlement service would be referred to the Title Companies;

b.  Whether Defendants violated 12 U.S.C. §2607 by giving and accepting any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service other than for services actually performed; and

c.  Whether Defendants are jointly and severally liable to Plaintiffs and the class members in an amount equal to three times the amount of any charge for settlement services paid to the Title Companies.

## COUNT ONE
### *Violation of Real Estate Settlement Practice Act*
### *12 U.S.C. § 2607*

54.     Plaintiffs incorporate all preceding paragraphs of this Complaint as if fully restated herein.

55.     In or around early November, 2019, the Kallais entered into a Residential Purchase Agreement to purchase the Home from the Seller.

56.     Plaintiffs and members of the class utilized the services of The Amy Wengerd Group, Amy, The Amy Wengerd Team Real Estate Agents, and/or the John Doe Real Estate

Agents in connection with the purchase and/or sale of their homes, and The Amy Wengerd Group, Amy, The Amy Wengerd Team Real Estate Agents, and/or the John Doe Real Estate Agents were compensated for said services.

57.     In connection with the purchase, sale and settlement of this transaction and/or similarly situated transactions of members of the class, Plaintiffs and members of the class either obtained a federally related mortgage loan or proceeds were used to payoff a federally related mortgage loan, as the term is defined in RESPA.

58.     Deed and title to the Home was formerly transferred to Plaintiffs on or about December 12, 2019.

59.     Defendants have entered into an agreement or understanding that The Amy Wengerd Group, with the direction, approval, and support of the Title Companies, will give fees, kickbacks, and/or other things of value to The Amy Wengerd Group Team Real Estate Agents, and/or the John Doe Real Estate Agents in the form of bonuses for referring business incident to or part of a real estate settlement service to the Title Companies.

60.     Pursuant to this agreement or understanding, The Amy Wengerd Group, Amy, The Amy Wengerd Team Real Estate Agents, and/or the John Doe Real Estate Agents routinely and habitually refer buyers and sellers of residential real estate to the Title Companies for the purpose of obtaining settlement services incident to the closing and/or payoffs of federally related mortgage loans, including Plaintiffs and the class members.

61.     The Amy Wengerd Group, with the direction, approval, and support of the Title Companies, gives and promises to give fees, kickbacks, and/or other things of value to The Amy Wengerd Team Real Estate Agents, and/or the John Doe Real Estate Agents in the form of bonuses

13

for referrals to the Title Companies, which The Amy Wengerd Team Real Estate Agents, and/or the John Doe Real Estate Agents accept and/or agree to accept.

62.     As The Amy Wengerd Group has an ownership interest in the Title Companies, the Title Companies give and The Amy Wengerd Group receives a portion of the income generated by the Title Companies and received by the Title Companies for rendering of real estate settlement services in connection with transactions involving federally related mortgage loans including Plaintiffs'.

63.     The Amy Wengerd Group does not perform any services in order to receive a portion of the income generated by the Title Companies.

64.     The Title Companies and the Amy Wengerd Group are affiliated business arrangements as defined by 12 U.S.C. 2602(7) as the Amy Wengerd Group has an ownership interest in the Title Companies and the Amy Wengerd Group, Amy, The Amy Wengerd Team Real Estate Agents, and/or the John Doe Real Estate Agents refer business to the Title Companies.

65.     Amy, The Team Real Estate Agents and John Doe Real Estate Agents are associates of The Amy Wengerd Group as defined by 12 U.S.C. 2602(8) as they have agreements with The Amy Wengerd Group as described above which enable The Amy Wengerd Group, The Team Real Estate Agents and John Doe Real Estate Agents to financially benefit from the referrals of such business.

66.     The payments from the Title Companies to The Amy Wengerd Group do not qualify for the exception set forth in 12 USC 2607(c)(4) because, as described above, value is received by The Team Real Estate Agents and John Doe Real Estate Agents from the arrangement that is not based upon a return on an ownership interest or franchise relationship.

67.     The pattern of activity described herein violates RESPA.

14

68.     Defendants are joint and severally liable to Plaintiffs and the class members in an amount equal to three times the amount of any charge for settlement services paid by them to the Title Companies together with the costs of this action and reasonable attorney fees.

**WHEREFORE**, Plaintiffs, Joshua and Jena Kallai, on behalf of themselves and others similarly situated, demand a money judgment against Defendants, jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), plus punitive damages, attorney fees, interest, costs, and any other relief that this Court deems appropriate.

Respectfully Submitted,

**LAW OFFICE OF JAMES J. COLLUM, LLC**


By:____/s/ James J. Collum_____
James J. Collum (#0070985)
4740 Belpar Street NW, Suite C
Canton, OH 44718-3685
Phone: (330) 494-4877
Fax: (330) 546-0667
e-mail: jcollum@collumlawoffice.com

*Attorney for Plaintiffs*